**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA GLAUBERZON, JEFFREY S. BATOFF, SUSAN M. BATOFF, JANET BLASKO, WILLIAM BARTZ, KALENE BARTZ, individually and on behalf of all others similarly situated, | Civil Action No.: 10-5929 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| PELLA CORP. and PELLA WINDOWS AND DOORS, INC., | |
| Defendants. | |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendants' (Pella Corp. and Pella Windows and Doors, collectively referred to as "Pella") motion to dismiss the Amended Complaint in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support and in opposition to the instant motion and no oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motion is granted in part and denied in part.

1

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>[1]

Plaintiffs bring the instant putative class action individually and on behalf of all owners of Pella's factory made window and door combinations.  At all times relevant to this litigation, Pella, an Iowa corporation with its principal place of business located in Pella, Iowa, has been in the business of marketing, promoting and selling, <u>inter</u> <u>alia</u>, factory made window and door combinations. (Am. Compl., ¶¶ 9, 10).  "Combinations are a grouping of windows (and sometimes include a door) assembled together in the factory within a single larger frame with a reinforcing connector between each window (and door) called a mullion." (<u>Id.</u> at ¶ 1).  The mullion carries the weight of the grouping of windows and serves to protect against wind, storms and other natural elements. (<u>Id.</u> at ¶ 2).  Plaintiffs allege, generally, that all Pella factory made window combinations contain a defective mullion design which allows water to penetrate the aluminum mullion. (<u>Id.</u> at ¶ 43).  Plaintiffs also allege that Pella knew about this defect but failed to disclose same to its consumers. (<u>Id.</u> at ¶¶ 13, 17).


<u>Plaintiff Glauberzon</u>

Plaintiff Angela Glauberzon, a resident of New Jersey, purchased a home in 2003; her home was constructed in 1995 with Pella factory made window combinations. (<u>Id.</u>, ¶ 24).  In or about 2007, Glauberzon discovered initial wood rot, wood and paint cracking, condensation, gaps between the windows and molding and was unable to close her window. (<u>Id.</u>, ¶ 27).  She contacted Pella in 2009. (<u>Id.</u>, ¶ 28).  Despite being aware of the mullion design defect, Pella recommended that

---

[1] The following relevant facts are accepted as true for purposes of the instant motion. <u>See</u>, <u>e.g.</u>, <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).

2

Glauberzon replace the locks on her windows, which she did, resulting in an out of pocket expense of $150.  (Id., ¶¶ 28, 30).  Even after replacing the locks, Glaumberzon continues to experience the same problems and will be forced to replace her window combinations altogether.  (Id., ¶ 29).


### The Batoff Plaintiffs

Jeffrey and Susan Batoff, citizens of Pennsylvania, constructed a custom home in 1991 and Pella windows and doors were installed throughout.  (Id. at ¶ 31).  After a few years, the windows began to leak.  (Id.).  In October 2007, the Batoffs replaced thirty-eight of the windows which had been installed in 1991 with newer, Pella Designer Series aluminum-clad wood casement, windows at a cost of $24,625.  (Id.).In June of 2009, the Batoffs noticed that four sets of the newly installed Pella factory window combinations were leaking water and that there was water damage to the windows' wood frame and surrounding areas.  On August 31, 2009, the Batoffs sent a letter to Pella which stated, in pertinent part: the "windows installed by [Pella's authorized regional dealer] and Pella are defective and leaking.  Please accept this letter as notice of a claim to that effect."  (Id. at ¶ 33).  Pella disclaimed any responsibility and instead blamed the leaks on faulty installation.  (Id. at ¶ 34).  As a result, the Batoffs contacted the authorized Pella window installer who had installed the windows and asked him to perform a water test on said windows.  The results indicated that "water is entering thru [sic] the horizontal and vertical mulls."  (Id. at ¶ 35). The Batoffs subsequently contacted Pella to complain and exercise their rights under the Pella Window warranty.  (Id. at ¶ 37). The Batoffs' Pella windows continue to leak water from the mullion defect.  (Id. at ¶ 38).  To date, Pella has failed to respond to their complaints and has failed to honor the applicable warranty.  (Id. at ¶ 39).

<u>Plaintiff Blasko</u>

Janet Blasko's home was constructed in 1997 with Pella factory made window combinations, all of which contained defective mullions. (Am. Compl., ¶¶ 41, 43). Blasko first discovered wood rot near one of her Pella windows in 2006. Pella recommended that Blasko replace the window, which she did, resulting in an out of pocket expense of $125.00. (<u>Id.</u> at ¶ 44). Blasko discovered wood rot beneath another Pella window in 2008. (<u>Id.</u> at ¶ 45). Pella again recommended that Blasko replace the window, which she did, resulting in an out of pocket expense of $376.60. (<u>Id.</u>). In 2009, Blasko discovered wood rot beneath a third Pella window. (<u>Id.</u> at ¶ 46). At Pella's recommendation, she replaced this window for $297.30. (<u>Id.</u>). Blasko has since discovered two additional Pella windows "that are rotten at the bottom." (<u>Id.</u> at ¶ 47). Pella has repeatedly refused to replace the factory made window combinations claiming that they were no longer covered by the applicable warranty. (<u>Id.</u> at ¶ 48).

<u>The Bartz Plaintiffs</u>

The Bartz Plaintiffs' home was completed in 1995 with Pella factory made window combinations. (Am. Compl., ¶ 51). The Bartz Plaintiffs, citizens of Wisconsin, discovered initial wood rot, wood and paint cracking, condensation, gaps between the windows and the molding and window warping in or about 2007. (<u>Id.</u> at ¶ 55). Pella refused to correct the problems because the window combinations were no longer under warranty. (<u>Id.</u>). As a result of continued deterioration, the Bartz Plaintiffs were forced to replace six Pella factory made window combinations in 2009, resulting in their out of pocket expense of $4,000.00. (<u>Id.</u> at ¶ 56). In 2010, they were forced to replace an additional three Pella factory made window combinations at a cost of $1,900. (<u>Id.</u> at ¶ 57).

Presently, the Bartz Plaintiffs must replace an additional fourteen (14) Pella factory made window combinations as a result of wood rot, paint and wood cracking, and an inability to close.  (Id. at ¶ 58).

Thus, Plaintiffs all maintain that prior to the purchase of their respective Pella combination windows, Pella was aware that its mullions contained an inherent defect, that all its window combinations contained this defective mullion design, and that such defect might not exhibit itself until after the expiration of the warranty period.  Plaintiffs further maintain that Pella did not disclose such defect to (and/or affirmatively concealed such defect from) its consumers, and, in doing so, has avoided honoring its warranty.  In light of the foregoing acts and/or omissions, Plaintiffs filed an original complaint in this matter on November 15, 2010.  An Amended Complaint was filed on January 4, 2011.  This Court's jurisdiction over this matter is premised on 28 U.S.C. § 1332.[2] Plaintiffs bring the following categories of claims against Pella: violation of various states' consumer protection laws, violation of the Magnusson-Moss Warranty Act, common law fraud, breach of implied warranty of merchantability, breach of express warranty and unjust enrichment.  Plaintiffs seek to bring such claims on behalf of California, Wisconsin, Illinois, Michigan, New Jersey, New York, Pennsylvania, North Carolina and Florida sub-classes.  Pella now seeks dismissal of Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

---

[2] The Court's jurisdiction over Plaintiffs' state law claims is premised on 28 U.S.C. § 1367.

[3] Generally speaking, since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state – New Jersey. Am. Cyanamid Co. v. Fermenta Animal Health, 54 F.3d 177, 180 (3d Cir.1995).  The parties do not dispute, however, that state law claims asserted by proposed subclasses from Illinois, Wisconsin and Pennsylvania are governed by the laws of those states.   For purposes of this motion, the Court has accepted the parties' position.

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [;][t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  With this framework in mind, the Court tuns now to Defendants' motion.

## DISCUSSION

As a preliminary matter, the Court notes that Plaintiffs have asserted an overarching claim of fraudulent concealment.  See Am. Compl., ¶ 76 ("Thus, running of the statute of limitations has been tolled with respect to any claims that Plaintiffs or the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein.").  It is not entirely clear to the Court which claims are asserted as timely (that is, as brought within the original statute of limitations period) and which claims are asserted as viable by virtue of the equitable tolling doctrine of fraudulent concealment (or both).  Such pleading fails to comply with the requirements

6

of Federal Rule of Civil Procedure 8(a)(2) which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Twombly, 550 U.S. at 555. (quotations omitted). Without such information, Defendant is not in a position to properly assess the timeliness of Plaintiffs' claims, and, as a result, the Court is being asked to assess the sufficiency of a variety of claims, by various Plaintiffs, from various states, in the abstract. Based on other reasons, more fully set forth below, the Court has dismissed the majority of those claims asserted in Plaintiffs' Amended Complaint without prejudice. To the extent Plaintiffs choose to file a Second Amended Complaint, Plaintiffs are each directed to more clearly delineate the theory (or theories) underlying each particular claim asserted, as required by Rule 8.

A.     **Fraud-Based Claims**

Having closely reviewed the allegations set forth in Plaintiffs' Amended Complaint, the Court finds that the following claims all hinge on allegations of fraud: (1) violation of the implied warranty of merchantability, (2) violation of the Magnuson-Moss Warranty Act, (3) violation of various states' consumer fraud acts, and (4) common law fraud. Pursuant to Federal Rule of Civil Procedure 9(b):

> A plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.' To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Based on the reasons that follow, the

Court finds that Plaintiffs' allegations of fraud are insufficient to meet Rule 9(b)'s heightened pleading standard.  As a result, the foregoing claims will be dismissed without prejudice.

**1.      Implied Warranty of Merchantability and Magnuson-Moss Warranty Act Claims**

Count of One of Plaintiffs' Amended Complaint alleges that:

> Pella knew or had reason to know of the ordinary use for which the factory made window and door combinations were purchased and impliedly warranted that these combinations were of merchantable quality and fit for such use as residential or commercial structure windows and doors.  Contrary to these representations, Pella's factory made window and door combinations are defective as they contain an inherent defect which allows water to get behind the aluminum mullion and rot out the wood components of these factory made combinations.

(Am. Compl., ¶ 79).  Count Two of Plaintiffs' Amended Complaint alleges a claim for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2201, et seq.  This claim is derivative of Plaintiffs' state law claim of breach of implied warranty (asserted in Count One).  See Am. Compl., ¶ 97; see generally Cooper v. Samsung Elecs. Am., Inc., No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008) ("Magnuson-Moss claims based on breaches of express and implied warranties under state law depend upon those state law claims.").

Pella moves to dismiss the breach of implied warranty claims (brought by Glauberzon, Blasko and the Barz Plaintiffs) on the basis that such claims are untimely.  Pella also seeks dismissal of this claim, as to Blasko and the Bartz Plaintiffs, because Plaintiffs have failed to allege the requisite element of privity.

8

### a.     Timeliness of Implied Warranty of Merchantability Claim

According to Pella, such claims are barred by the applicable statute of limitations.  The Court need not make findings as to the applicable statute of limitations under New Jersey, Illinois and/or Wisconsin law at this time because the foregoing Plaintiffs do not expressly dispute that they have sued Pella outside the relevant limitations period; rather, it appears that the foregoing Plaintiffs have premised their implied warranty claims on the notion that the applicable statute of limitations should be tolled by virtue of the equitable tolling doctrine of fraudulent concealment.  In particular, Plaintiffs allege, generally, that Pella took affirmative steps to conceal the mullion defects from Plaintiffs so as to delay their filing of claims. (Am. Compl., ¶ 74; Pl. Br. at 7).

As one court in this district has explained:

> Three elements must be pleaded and proved in order to establish fraudulent concealment: (1) wrongful concealment by the party raising the statute of limitations defense, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period (3) despite the exercise of due diligence.

Dewey v. Volkswagen AG, 558 F. Supp.2d 505, 523 (D.N.J. 2008). Under New Jersey law, "concealment presupposes knowledge of a fact and concealment of it from one not in possession of such knowledge . . . Generally, fraudulent concealment depends upon the presence of some trick or contrivance intended to exclude suspicion and prevent inquiry." Rothman v. Silber, 90 N.J. Super. 22, 35 (App. Div. 1966). Similarly, under Illinois law, a plaintiff must allege "affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim. Mere silence of the defendant and the mere failure on the part of the plaintiff to learn of a cause of action do not amount to fraudulent concealment." Cangemi v. Advocate South Suburban Hosp., 845 N.E.2d

792, 804 (Ill. App. Ct. 2006). Wisconsin law also requires affirmative conduct by the defendant to trigger the tolling of statute of limitations based upon fraudulent concealment. See, e.g., Bell v. City of Milwaukee, 746 F.2d 1205, 1229-30 (7th Cir. 1984) (recognizing that a defendant may be estopped from asserting statute of limitations defense because of fraudulent conduct, and requiring, among other things, affirmative conduct by defendant during the limitations period, but noting that actual fraud is not required). Plaintiffs cite to no caselaw which suggests otherwise.

Having carefully reviewed the allegations set forth in Plaintiffs' Amended Complaint, the Court finds that the foregoing Plaintiffs have failed to plead any affirmative acts of concealment by Pella. For instance, Plaintiffs have failed to plead the specific date, time and place of the alleged fraud, concealment or trick. See, e.g., Frederico, 507 F.3d at 200; Patetta v. Wells Fargo Bank, NA, No. 09-2848, 2009 WL 2905450,at * 4 n. 7 (D.N.J. 2009) ("At the very minimum, Plaintiffs were required to plead the who, what, where, and when of the purported fraud that prevented Plaintiffs from discovering the fraudulent misconduct."). Even absent such information, Plaintiffs have failed to inject "some measure of substantiation" into their allegations of fraudulent concealment. Frederico, 507 F.3d at 200. For instance, Plaintiff Glauberzon alleges that she was told by Pella that the locks (as opposed to the mullion) were causing the problems with her windows. (Am. Compl., ¶ 28). Plaintiff Blasko alleges that when she first noticed the wood rot in her windows, she contacted Pella who refused to honor the manufacturer's warranty and "never told her of the mullion defect." (Pl. Br. at 9; Am. Compl., ¶ 44-47). Similarly, the Bartz Plaintiffs allege that they contacted Pella in 2007, as soon as they discovered initial wood rot in their windows, and that "[i]nstead of acknowledging the factory made mullions defect of which they were aware, Pella recommended that the Bartzes replace their factory made window combinations." (Am. Compl., ¶ 55). Such actions,

10

according to the foregoing Plaintiffs, prevented them from learning of the mullion defect.   The

foregoing allegations presuppose, however, that Pella knew that (a) the mullions were defective, and

(b) the defective mullions were the cause of each of their window-related problems.  Aside from the

conclusory statement that Pella was aware of this defect, Plaintiffs have alleged no facts to inject

some measure of substantiation into such allegations.  The Supreme Court, in Iqbal, made clear that:

> [T]he Federal Rules do not require courts to credit a complaint's
> conclusory statements without reference to its factual context.
> [Moreover,] [i]t is true that Rule 9(b) requires particularity when
> pleading "fraud or mistake," while allowing "[m]alice, intent,
> knowledge, and other conditions of a person's mind [to] be alleged
> generally." But "generally" is a relative term. In the context of Rule
> 9, it is to be compared to the particularity requirement applicable to
> fraud or mistake. Rule 9 merely excuses a party from pleading
> discriminatory intent under an elevated pleading standard. It does not
> give him license to evade the less rigid – though still operative –
> strictures of Rule 8.  And Rule 8 does not empower respondent to
> plead the bare elements of his cause of action, affix the label "general
> allegation," and expect his complaint to survive a motion to dismiss.

Iqbal, 129 S.Ct. at 1954.  Absent such factual content, Plaintiffs have failed to allege a plausible

basis for application of equitable tolling by way of fraudulent concealment.  See generally Iqbal, 129

S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Accordingly, in the absence of a claim for equitable tolling, the breach of implied warranty of

merchantability claims asserted by the foregoing Plaintiffs are dismissed without prejudice as time-

barred.  See, e.g., Nelson v. Maverick Funding Corp., 2011 WL 1045117, at *3 (D.N.J. March 23,

2011) (granting motion to dismiss and noting that "[w]hile Plaintiffs contend the statute of

'limitations should be equitably tolled due to Defendants' fraudulent concealment of facts necessary

for Plaintiffs to know that they had a claim,' they utterly fail to state facts in support of the alleged

fraudulent concealment. Such bare invocations of the legal standard without factual support will not suffice."); Carmen v. Metrocities Mortg., No. 08-2729, 2010 WL 421115, at *5 (D.N.J. Feb. 1, 2010) (granting motion to dismiss and noting that "Plaintiffs were required to plead with specificity how Metrocities took some additional step to conceal the original fraud/misdeed. They have not done so. Plaintiffs have merely parroted the requirements for fraudulent concealment without any meaningful factual pleading to support the elements.").

Having failed to state a viable claim for breach of the implied warranty of merchantability, Plaintiffs' derivative Magnuson-Moss Warranty Act claim, which is expressly premised on Pella's breach of the implied warranty (Am. Compl., ¶¶ 93, 97), must also be dismissed without prejudice. See, e.g., Cooper v. Samsung Elecs. Am., Inc., 374 Fed. Appx. 250, 254 (3d Cir. 2010) ("In the instant case, Cooper's Magnuson-Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both of those claims, Cooper's Magnuson-Moss claim was also properly dismissed.").

### b.      Privity

Although Plaintiffs' implied warranty claims have been dismissed as time-barred, in the interest of judicial economy, the Court will take this opportunity to consider Pella's privity argument. It is undisputed that Illinois and Wisconsin law require privity of contact for implied warranty claims. See, e.g., Bd. of Ed. of City of Chicago v. A, C and S, Inc., 546 N.E.2d 580, 595 (Ill. 1989) ("Generally, under the contract principles of the Uniform Commercial Code, in order to state a claim against the defendant for breach of implied warranty, privity must exist between the plaintiff and defendant."); Dippel v. Sciano, 155 N.W.2d 55, 59 (Wis. 1967) ("Wisconsin still requires privity between the plaintiff user and the manufacturer, or the supplier in breach-of-implied-warranty

cases.").   Neither Blasko nor the Bartz Plaintiffs allege that they purchased windows directly from Pella. (Am. Compl., ¶ 41, 51).

Plaintiffs maintain that Blasko's claim is nevertheless viable because an exception to the privity rule exists in Illinois where "there is a direct relationship between the manufacturer and the seller." Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co., 408 N.E.2d 403, 412 (Ill. App. Ct. 1980); but see Rothe v. Maloney Cadillac, Inc., 518 N.E.2d 1028, 1030 (Ill. 1988) (dismissing implied warranty claim after finding that there was "no buyer-seller relationship between the plaintiff and GM."); Zaro v. Maserati North Am., Inc., No. 07-3565, 2007 WL 4335431, at *4 (N.D. Ill. Dec. 6, 2007) ("Zaro cites no Illinois case law supporting the proposition that a general agency principle creates privity between a purchaser and a non-selling manufacturer. Moreover, 'an automobile dealer or other similar type of dealer, who ... merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent.' Zaro's effort to create such a rule of privity would merely be an effort to 'constitute an end around the privity requirement' ") (quotations omitted).   In particular, Plaintiffs argue that this exception applies because "there is a direct relationship between the manufacturer and its authorized dealers or sellers such as Pella and Pella Windows and Doors." (Pl. Opp'n Br. at 12).

Plaintiffs also maintain that the Bartz Plaintiffs' claim is viable because Wisconsin law recognizes an exception to the privity rule where an agency relationship exists such as between the manufacturer and the seller.  In support of this position, Plaintiffs cite to a decision by the Court of Appeals for the Seventh Circuit, wherein the Court discusses agency relationship in the context of assessing an implied warranty claim but cites to no specific legal authority for the principle that Wisconsin law recognizes an exception to the privity rule where an agency relationship exists

13

between the manufacturer and seller.

In any event, even assuming, arguendo, that such exceptions to the privity rule exist under Illinois and/or Wisconsin law, a finding which the Court does not make at this time, the Amended Complaint lacks facts in support of either theory.  To be clear, Plaintiffs do not allege whether Blasko and/or the Bartz Plaintiffs bought windows (as opposed to a house), who they bought such windows from or any other facts that would suggest an agency relationship between Pella and its authorized dealers or sellers.  Without such facts, the Blasko and Bartz Plaintiffs have failed to nudge their implied warranty claims, and in particular, their theory of privity, "across the line from conceivable to plausible." Twombly, 550 U.S. at  547.  To the extent the Blasko and/or Bartz Plaintiffs wish to rely on such a theory – in order to allege a viable implied warranty claim – the Amended Complaint should be amended to incorporate facts in support of same.


### 2.      Consumer Fraud Claims and Common Law Fraud Claims

Plaintiffs allege that "Pella was aware that its mullions contained an inherent defect that allows water to seep behind the aluminum and rot out the wood components of the factory made window and door combinations." (Am. Compl., ¶ 13). Count Three of the Amended Complaint alleges that Pella violated New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., by selling said window and door combination with knowledge of the mullion design flaw and the fact that it may not manifest itself until after the expiration of the applicable warranty, by failing to disclose to same to its consumers, and with the intent that Plaintiffs (and other consumers) would rely on such deception.  Counts Four, Five and Six allege similar consumer fraud claims based on other states' laws.  Plaintiffs also assert a related common law fraud claim.  All such fraud-based claims fall

within the ambit of Rule 9(b)'s heightened pleading standard. Defendants seek dismissal of all such claims, with the exception of the Pennsylvania Unfair Trade Practices claim, for failure to comply with Rule 9(b).

To state a claim pursuant to the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must generally allege three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss.  Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007) (internal quotations omitted).    The CFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. § 56:8-2. This broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations.  Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).  When the alleged unlawful act consists of an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful  act. However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cox, 138 N.J. at 17-18.

Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the elements discussed above, but those allegations must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. See Rait v. Sears, Roebuck and

15

Co., No. 08-2461, 2009 WL 250309, at * 4 (D.N.J. Feb. 3, 2009); Parker v. Howmedica Osteonics

Corp., No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008).  These requirements may be

satisfied "by pleading the date, place or time of the fraud, or through alternative means of injecting

precision and some measure of substantiation into [the] allegations of fraud."  Lum v. Bank of Am.,

361 F.3d 217, 224 (3d Cir. 2004) (internal quotations omitted).

The unlawful conduct alleged in Plaintiffs' Amended Complaint is the omission of a material

fact.  Because the Court finds that Plaintiffs' consumer fraud and common law fraud claims all suffer

from the same fundamental flaw discussed above in connection with Plaintiffs' fraudulent

concealment claim – namely, failure to plead with sufficient particularity Pella's knowledge of the

existence of a product-wide mullion defect – the Court declines to engage in a detailed analysis of

the various states' consumer fraud claims.  Suffice it to say that Plaintiffs have provided no legal

authority for the proposition that the NJCFA, the Illinois Consumer Fraud and Deceptive Business

Practice Act ("ICFA") or the Wisconsin Deceptive Trade Practices Act ("WDTPA") require

manufacturers to disclose things they do not know (or that such was required at common law).[4]  See

---

[4] To the contrary, the NJCFA and ICFA both require deceptive intent.  See Siegel v. Shell Oil Co., 612 F.3d 932, 934 (7th Cir. 2010);  Cox, 138 N.J. at 17-18.  Although deceptive intent is not required to state a WDTPA claim, Plaintiffs must allege, among other things, that Pella made a representation to the public that was untrue, deceptive or misleading.  See, e.g., K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc., 732 N.W.2d 792, 798 (Wis. 2007).  A common law fraud claim also requires a material misrepresentation of fact and knowledge or belief by the defendant of its falsity.  Frederico, 507 F.3d at 200.  In this regard, Plaintiffs allege that "Pella made fraudulent representations that its factory made window combinations were of the highest quality." (Am. Compl., ¶ 158).  Such allegation (which also presupposes Pella's knowledge that the product-wide mullion defect, in fact, existed) is not a statement of fact, but merely an expression in the nature of puffery and thus not actionable. See, e.g., New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 14 (App. Div. 2003).

16

Alban v. BMW of North Am., LLC, No. 09-5398, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010) ("Put simply, the NJCFA does not require manufacturers to disclose things they do not know."). Based on the reasons that follow, the Court finds that Plaintiffs have failed to inject sufficient precision into their allegations that Pella knew that a product-wide mullion defect existed and failed to disclose same to Plaintiffs. Plaintiffs' New Jersey, Illinois and Wisconsin consumer fraud act and common law fraud claims – all of which hinge on this factual premise – are therefore dismissed without prejudice.

Plaintiffs' consumer fraud and common law fraud claims are premised upon Pella's failure to disclose certain material facts – namely: (1) there was a high probability that water would leak through the Pella factory made window and door combinations mullions, (2) the mullion design defect might not manifest itself until after the warranty period expired, and (3) Pella would either ignore or discount the complaints of mullion defect if they manifested during the warranty period or Pella would not commit to repairing the latent mullion defect if it manifested itself after the warranty period expired. (Am. Compl., ¶ 179). Plaintiffs further allege that Pella "intended that [Plaintiffs] would rely on the deception by purchasing Pella factory made window and door combinations, unaware of the material facts described above." (Am. Compl., ¶ 105).

These assertions by Plaintiffs "do not inject sufficient precision into the allegations of fraud." See Palmeri v. LG Electronics USA, Inc., No. 07-5706, 2008 WL 2945985, at * 3 (D.N.J. July 30, 2008). The majority are merely broad conclusions which, if buttressed in the complaint with specific factual averments, might suffice to set forth a claim under the CFA. However, the Complaint currently lacks such factual detail; it does not provide any level of precision or put Pella on notice of the basis for their fraud-based allegations. For instance, Plaintiffs do not identify who at Pella was

17

aware of the existence of a product-wide mullion defect, when or how they learned of such defect and/or when or how the decision was made to conceal the defect from its customers – all of which are required under the Rule 9(b) pleading standard.  See, e.g., In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 -277 (3d Cir. 2006).  Most importantly, Plaintiffs do not allege, with sufficient factual support: (1) that all, or even substantially all, Pella factory made window and door combinations include the defective mullions, (2) that Pella knew that the mullions were certain to fail, and (3) that Pella limited the warranty agreement's duration in an effort to avoid the cost of repairs.[5]

There are a myriad of ways in which plaintiffs may substantiate fraud claims that would satisfy the pleading requirements of Rule 9(b).  For example, plaintiffs  may plead specific facts that provide a basis for the belief of what defendant is alleged to have known and when.  Plaintiffs may also attach to the a complaint documents or exhibits that support their allegations, such as expert reports or documentation demonstrating a history of behavior, or use any other means that gives some measure of precision to what are otherwise broad and conclusory allegations.  Absent such factual content, Plaintiffs' New Jersey, Illinois and Wisconsin consumer fraud and common law fraud claims fail to satisfy the pleading requirements of Rule 9(b) and are therefore dismissed without prejudice.

---

[5] Without such factual content, which Rule 9(b) requires, the Amended Complaint, at best, alleges that Pella knew that its window and door combinations might be defective and that such defect might not manifest itself until after the expiration of the warranty period.  Such allegations are insufficient to state a claim at least under the NJCFA.  See, e.g., Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 111-112 (App. Div. 2006) ("[A]bsent those circumstances in which safety concerns might be implicated, as to which we offer no view – the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the CFA.").

**B.      Unjust Enrichment**

Plaintiffs allege, generally, that: (1) Plaintiffs conferred upon Pella payment for Pella factory made window and door combinations, (2) Pella accepted and retained the benefits conferred by Plaintiffs despite the fact that Plaintiffs were not receiving products of the high quality or value that had been represented by Pella, and (3) retaining the benefits conferred upon Pella by Plaintiffs, under these circumstances, is unjust and inequitable. (Am. Compl., ¶ 169).

Pella seeks to dismiss Plaintiffs' unjust enrichment claims on various grounds, including but not limited to, the fact that such claims are time-barred.  "Under New Jersey law, non-personal injury actions involving monetary damages must be "commenced within 6 years after the cause of any such action shall have accrued."  Baer v. Chase, 392 F.3d 609, 622 (3d Cir. 2004) (citing N.J.S.A. § 2A:14-1).  Generally speaking, the time limit for unjust enrichment claims begins to run when the benefit on defendant is rendered.  See id. at 623. Plaintiffs do not address the timeliness of their unjust enrichment claims in opposing Pella's motion to dismiss said claim. Having considered Pella's argument in this regard, the Court finds that, based on the current pleading, it is not in a position to assess the timeliness of Plaintiffs' unjust enrichment claims because Plaintiffs have failed to specify: (a) the particular benefit conferred on Pella by each particular Plaintiff, and (b) the general time frame when each particular benefit was conferred.  For instance, Plaintiffs state, in their opposition brief, "[e]ach plaintiff alleged that benefits were conferred on Pella by the initial purchase of these defective factory made window combinations and then by the payments for repairs and/or replacement of the defective windows." (Pl. Opp'n Br. at 27).  In ambiguously framing their claim – to include multiple potential benefits conferred by various people at unspecified or various points in time – Plaintiffs have failed to provide Pella with proper notice of what the claim is and the

19

specific grounds upon which it rests, in violation of Rule 8(a) of the Federal Rules of Civil Procedure. As a result, neither Pella nor the Court is in a position to properly assess the timeliness of Plaintiffs' unjust enrichment claims.  For this reason, as well as the reasons set forth below, Plaintiffs' unjust enrichment claims are dismissed without prejudice.

Although the Court need not consider Pella's remaining arguments in support of dismissal of Plaintiffs' unjust enrichment claim, for purposes of completeness, the Court will do so.


Plaintiff Glauberzon

To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).

As to Plaintiff Glauberzon, the Amended Complaint admits that the parties' relationship was governed by an express warranty.  See Am. Compl., ¶¶ 174-177.  Under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982).  Even beyond this flaw, the Amended Complaint does not allege that Plaintiff Glauberzon conferred any benefit on Pella for the window and door combinations at issue.  Any such benefit was presumably conferred by the prior home owner.  See Am. Compl., ¶ 24.  To the extent Glauberzon did confer a benefit on Pella in exchange for the windows at issue, the Amended Complaint should be amended accordingly and supplemented with facts to support this allegation.

20

To the extent Glauberzon's unjust enrichment claim is, instead, premised upon the benefit she conferred on Pella in exchange for the replacement locks (Am. Compl., ¶ 28),[6] any such claim would fail inasmuch as Glauberzon admits that, in exchange for any payments she made for replacement locks, Pella did provide said replacement locks.  (Am. Compl., ¶ 29).  The Amended Complaint fails to allege that Glauberzon expected any <u>additional</u> remuneration from Pella at the time such payments were made <u>or</u> that Pella was otherwise enriched beyond its contractual rights. <u>See, e.g.,</u> <u>VRG Corp.</u>, 641 A.2d at 526 (explaining that the "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant").  Because Glauberzon received the replacement locks that she paid for, Glauberzon has failed to a state a claim for unjust enrichment which is plausible on its face.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949; <u>see, e.g.,</u> <u>In re Toshiba Am. HD DVD Marketing and Sales Practices Litig.</u>, No. 08-939, 2009 WL 2940081, at *14 (D.N.J. Sept. 11, 2009) (dismissing unjust enrichment claim where "Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received.").  Such claim is, therefore, dismissed without prejudice.

---

[6] Glauberzon attempts to clarify, by way of opposition brief, that the benefit she conferred on Pella was actually the payment for replacement locks.  (Am. Compl., ¶ 28).  A complaint cannot be amended by way of a brief in opposition to a motion to dismiss. <u>See, e.g.,</u> <u>Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,</u> 836 F.2d 173, 181 (3d Cir.1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").  Nevertheless, for purposes of completeness, the Court has considered this theory in assessing the sufficiency of Glauberzon's unjust enrichment claim.

<u>Plaintiff Blasko</u>

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege the defendant unjustly retained a benefit to the plaintiff's detriment, and the defendant's retention violated the fundamental principles of justice, equity, and good conscience." <u>Galvan v. Northwestern Memorial Hosp.</u>, 888 N.E.2d 529, 541 (Ill. App. Ct. 2008).  Unjust enrichment "does not apply where there is a specific contract that governs the relationship of the parties." <u>Bd. of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Imp. Ass'n</u>, 934 N.E.2d 636, 644 (Ill. App. Ct. 2010).

Blasko's unjust enrichment claim fails because: (1) the Amended Complaint concedes that the parties' relationship as it relates to the subject matter at issue was governed by a contract,[7] (2) the Amended Complaint does not allege that Blasko conferred any benefit on Pella in exchange for the windows at issue,[8]  and (3) to the extent Blasko's claim is based upon the benefit she conferred on Pella for replacement windows, the Amended Complaint admits that, in exchange for such payments, Pella did provide the replacement windows contracted for.[9]  Plaintiff Blasko has, therefore, failed to allege a claim for unjust enrichment which is plausible on its face.

---

[7] (Am. Compl., ¶¶ 174-177).

[8] (Am. Compl., ¶ 41).  To the extent Blasko did confer a benefit on Pella in exchange for the purchase of the windows at issue, the Amended Complaint should be amended accordingly and supplemented with facts in support of same.

[9] (Am. Compl., ¶¶ 44-47).

<u>The Barz Plaintiffs</u>

"In Wisconsin, an action for unjust enrichment, or quasi contract, is based upon proof of three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." <u>Watts v. Watts</u>, 405 N.W.2d 303, 313 (Wis. 1987). "The doctrine of unjust enrichment does not apply where the parties have entered into a contract." <u>Continental Cas. Co. v. Wisconsin Patients Compensation Fund</u>, 473 N.W.2d 584, 587 (Wis. Ct. App. 1991).

The unjust enrichment claim asserted by the Bartz Plaintiffs fails because: (1) the Amended Complaint concedes that the parties' relationship as it relates to the subject matter issue was governed by a contract,[10] (2) the Amended Complaint does not allege that the Bartz Plaintiffs conferred any benefit on Pella in exchange for the windows at issue,[11] and (3) to the extent the Bartz Plaintiffs' claim is based upon the benefit they conferred on Pella for replacement windows, the Amended Complaint admits that, in exchange for such payments, Pella did provide the replacement windows contracted for.[12]   Their claim for unjust enrichment is, therefore, dismissed without prejudice.  <u>See, e.g.,Ball v. Sony Electronics Inc.</u>, No. 05-307, 2005 WL 2406145, at *6 (W.D. Wis. Sept. 28, 2005) (dismissing unjust enrichment claim and noting that "[t]here is no question that plaintiffs entered into contracts for the purchase of their camcorders. Plaintiffs believe that they paid

---

[10] (Am. Compl., ¶¶ 174-177).

[11] (Am. Compl., ¶ 51).  To the extent the Bartz Plaintiffs did confer a benefit on Pella in exchange for the purchase of the windows at issue, the Amended Complaint should be amended accordingly and supplemented with facts in support of same.

[12] (Am. Compl., ¶¶ 56-60).

23

more than the camcorders were worth because they were defective. However, under such circumstances any remedy must be based on the law of contract and warranty, not unjust enrichment. Unjust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies.").

## C.    Express Warranty

Plaintiffs and the proposed class members each bring a breach of express warranty claim against Pella. Plaintiffs allege that each Pella factory made window combination sold after 1995 came with an express transferrable ten-year limited warranty. (Am. Compl., ¶ 174). Plaintiffs admit that Pella had a one year warranty on products sold before 1995. (Am. Compl. at 45, n. 4). Plaintiffs further allege that, as part of the terms of the sale, they each accepted such offer and paid to Pella the required consideration for the window and door combinations. (Am. Compl., ¶ 175). Finally, Plaintiffs allege that Pella has breached its contracts with Plaintiffs by: repudiating the ten-year warranty; refusing to honor the ten-year warranty; and/or by refusing to provide replacement factory made window and door combinations. Plaintiffs have been damaged by virtue of such breach. (Am. Compl., ¶¶ 176-177).

In moving to dismiss this claim, Pella has attached the one-year warranty that purportedly governs Glauberzon and the Bartz Plaintiffs' express warranty claim. "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiffs do not dispute the authenticity of said document, nor do Plaintiffs dispute that Glauberzon and the Bartz Plaintiffs' express warranty claim

24

is based upon a limited one-year warranty.

<u>Plaintiff Glauberzon</u>

Plaintiffs maintain that Glauberzon's claim (brought in 2010) is timely because she had four years after her discovery of the defect (which occurred, according to the Amended Complaint, in 2007) to sue Pella for its breach of express warranty.  Plaintiffs rely on N.J.S.A. 12A:2-725(2), and, in particular, the subsection corresponding to warranties for future performance in support of this position.  N.J.S.A. 12A:2-725(2)  provides, in pertinent part:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

N.J.S.A. 12A:2-725(2).  Without conceding that the warranty applicable to Plaintiffs' express warranty claims is a warranty for the future performance of goods, Pella maintains that Glauberzon's claim is untimely, even assuming it extended to future performance, because "[t]he latest the cause of action may accrue . . . is the end of the warranty period." (Def. Br. at 9).  In support of this position, Pella relies on an Appellate Division decision where the court explained:

> If the warranty explicitly extended to future performance of the truck, the four-year limitations period did not begin to run until the breach the paint defect was or should have been discovered by plaintiff, **provided the defect arose within the warranty period**.

<u>Comm'rs  of Fire Dist. No. 9, Iselin, Woodbridge, N.J. v. Am. La France</u>, 176 N.J. Super. 566, 57 (App. Div. 1980).  Plaintiffs cite to no legal authority to the contrary.

It is undisputed that: (1) the windows at issue were installed at or around 1995 (Am. Compl., ¶ 24), and (2) the warranty provided by Pella to Glauberzon (or the previous owner of her house) was a one-year warranty (Am. Compl. at 45 n. 4).  Thus, Glauberzon had until 1996 to discover any defect and until 2000 to bring suit against Pella for such defect.  See Am. La France, 176 N.J. Super. at 57.  Glauberzon discovered initial wood rot in 2007 (Am. Compl., ¶ 27) and brought suit against Pella in 2010.  In light of the foregoing, Plaintiff Glauberzon has failed to state a claim for breach of the express warranty which is plausible on its face.

To the extent Plaintiffs have attempted to assert fraudulent concealment as basis for tolling the statute of limitations as to this claim, as discussed above, any such claims of fraudulent concealment fail to comply with the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure.  In the absence of a claim for equitable tolling, Glauberzon's breach of express warranty claim is dismissed as time-barred.

### The Blasko and Bartz Plaintiffs

The parties agree that, in Illinois, breach of contract actions for the sale of goods must be commenced within four years of accrual of the cause of action and that a claim for breach of an express warranty of future performance accrues "when the breach is or should have been discovered." 810 ILCS 5/2-725(1)-(2).  The parties also agree that Wisconsin's limitations period is six years and that a claim for breach of an express warranty of future performance accrues when the breach is or should have been discovered.  Wis. Stat. § 402.725(1)-(2).  Pella cites to no legal authority from either the state of Illinois or Wisconsin containing the additional caveat that the discovery rule may extend the limitations period only if the defect arose within the original warranty

period.

Because the timeliness of the Blasko and Bartz Plaintiffs' express warranty claims depends on the factual determination of when Pella's alleged breach was or should have been discovered by these Plaintiffs, the Court finds it premature to engage in a statute of limitations analysis at this time. Again, having said that, to the extent Blasko and/or the Bartz Plaintiffs seek to assert fraudulent concealment as basis for tolling the statute of limitations as to this particular claim, as explained above, any such claim of fraudulent concealment fails to comply with the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

### D.     Declaratory Relief

Count VII seeks a declaration by the Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Pella's 10 year time limitation on manufacturing defects is void, invalid and not enforceable. (Am. Compl., ¶ 188).  In this regard, Plaintiffs argue that, "to the extent the warranty period would serve to effectively immunize Pella from liability for the defect that existed from the time of manufacture and sale, such a period is unconscionable and may not be enforced." (Pl. Opp'n Br. at 16).

Pella seeks dismissal of this claim on the basis that the Declaratory Judgment Act is only a procedural vehicle which does not constitute its own substantive cause of action.  In particular, Pella urges the Court to dismiss this claim because Plaintiffs fail to identify any underlying cause of action upon which they rely in asserting that Pella's express warranty should be declared invalid.  Plaintiffs do not directly address this point, as a legal matter.  See Pl. Opp'n Br. at 16.

The Third Circuit has explained that:

27

> In form the Declaratory Judgment Act differs in no essential respect from any other action. The conditions of the usual action, procedural and substantive, must always be present, namely, the competence or jurisdiction of the court over the parties and subject matter, the existence of the operative facts justifying the judicial declaration of legal consequences, the assertion against an interested party of rights capable of judicial protection, and a sufficient legal interest in the moving party to entitle him to invoke a judgment in his behalf.

Aralac, Inc. v. Hat Corp. of Am., 166 F.2d 286, 290 (3d Cir. 1948); see generally Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937) ("Thus the operation of the Declaratory Judgment Act is procedural only.").

Having closely reviewed this claim, the Court agrees that Plaintiffs' Declaratory Judgment Act claim fails to comply with Rule 8(a) inasmuch as it fails to provide Pella with proper notice of the specific grounds upon which it rests. Plaintiffs' Amended Complaint asks the Court to declare Pella's express warranties "void, invalid and not enforceable" but it is not clear to the Court the legal basis on which Plaintiffs ask the Court to do so. Plaintiffs' brief in opposition to the instant motion simply claims that Pella's express warranty is unconscionable. The Amended Complaint contains no such allegation, nor does the Amended Complaint allege the facts necessary to state such a claim. See, e.g., Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564 (Ch. Div. 2002) ("For the most part, the unconscionability cases . . . look for two factors: (1) unfairness in the formation of the contract, and (2) excessively disproportionate terms."). Finally, to the extent such claim is based upon the claim that Pella has wrongfully denied express warranty claims despite knowledge that the leaks or wood rot were caused by the mullion defect, the Court has already found, in the context of various other claims, that Plaintiffs have failed to inject sufficient precision into their allegations that Pella knew that a product-wide mullion defect existed. See generally Interfaith Community

28

Organization v. Honeywell Intern., Inc., 263 F. Supp.2d 796, 871 (D.N.J. 2003) ("[B]ecause Honeywell cannot sustain its burden on its substantive RCRA, CERCLA and Spill Act claims against the Grace Defendants, as set forth above, Honeywell is not entitled to a declaratory judgment."). This claim is therefore dismissed without prejudice.

**E.    Claims Brought by Batoff Plaintiffs**

As summarized above, the Batoff Plaintiffs bring various claims against Pella on behalf of a Pennsylvania sub-class, based upon Pella windows installed in their house which allegedly contained defective mullions. Pella seeks dismissal of all claims asserted by the Batoff Plaintiffs on the basis that the Batoffs are barred from bringing such claims by virtue of a settlement agreement entered into by the Batoffs and Pella in 2007. In support of their motion, Pella attaches the release purportedly entered into by the parties in 2007.

In evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan, 20 F.3d at 1261. The Amended Complaint makes no reference to the release and/or settlement agreement. See, e.g., Pension Ben. Guar. Corp., 998 F.2d at 1196. Although the Court has the discretion to consider matters outside of the pleadings so long as it gives proper notice to the opposing party of its intent to convert the motion into one for summary judgment,[13] the Court declines to do so in conjunction with the instant motion to dismiss which raises a variety of separate and unrelated legal arguments as to numerous claims under various states' laws. To the extent Pella seeks to file a motion for

---

[13] See, e.g., McDaniels v. New Jersey Div. of Youth and Family Servs., 144 Fed. Appx. 213, 216 (3d Cir. 2005).

summary judgment limited to this particular issue prior to the completion of discovery, they may seek leave to do so from Magistrate Judge Mark Falk at the appropriate time.  Pella's motion to dismiss the claims asserted by the Batoff Plaintiffs on the basis that they are barred by virtue of a release agreement entered into by the parties is, therefore, denied without prejudice.

**F.      Motion to Dismiss for Improper Venue**

Pella moves to dismiss, pursuant to Rule 12(b)(3), those claims asserted by the non-New Jersey Plaintiffs (Blasko, Bartz and the Batoffs) on the basis that, once New Jersey Plaintiff Glauberzon's claims are dismissed, venue is not proper for the remaining claims asserted by the non-New Jersey Plaintiffs as governed by 28 U.S.C. § 1391.[14]  Because the majority of Glauberzon's claims have been dismissed without prejudice and with leave to amend, the Court declines to rule on whether venue would be proper in this district, absent her claims, at this time.  Even if the Court were inclined to rule on this issue at this time, the Court has closely reviewed the parties' submissions on the matter and finds that the relevant issues have been inadequately briefed by both sides.  For instance, neither side even addresses the relevant legal standard on a motion brought

---

[14] 28 U.S.C. § 1391(a) provides that:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

pursuant to Rule 12(b)(3).  Pella's motion to dismiss all claims by the non-New Jersey Plaintiffs on the basis of improper venue is therefore denied without prejudice.

## G.    Motion to Strike

Pella moves to strike, pursuant to Rule 12(f), claims asserted on behalf of the California, Michigan, New York, North Carolina and Florida subclasses because they lack a named representative.  Plaintiffs do not dispute that a class representative is necessary for each subclass alleged in the Amended Complaint; rather, Plaintiffs simply seek leave to amend their complaint in order to cure such deficiency.  Because the Court is, in any event, affording Plaintiffs with an opportunity in which to amend the majority of their claims, in the interest of judicial economy, Pella's motion to strike is denied without prejudice.  Should Plaintiffs wish to assert claims on behalf of California, Michigan, New York, North Carolina and Florida subclasses, Plaintiffs shall amend their complaint  to include any necessary class representatives.

## H.    Motion for More Definite Statement

Pella moves for a more definite statement, pursuant to Rule 12(e), of the claims asserted by the non-New Jersey Plaintiffs.  In this regard, Pella urges the Court to direct the non-New Jersey Plaintiffs to disclose or identify: (1) whether they bought houses or windows, (2) whether they purchased windows directly from Pella or PWD, paid a contractor to build a house or bought a house from someone else, and (3) what express warranty applies, including vintage and brand information for each challenged window. (Def. Br. at 24).  Without such information, Pella maintains that it is unable to properly assess viability of the claims asserted.  In response, Plaintiffs concede the

relevance of such information, but maintain that it is more appropriately obtained during the course of discovery.

The Court has considered the parties' submissions on the matter and finds that the bulk of Pella's request is now mooted by the Court's Opinion.  For instance, in the context of assessing Plaintiffs' implied warranty claims, the Court specifically held that:

> Plaintiffs do not allege whether Blasko and/or the Bartz Plaintiffs bought windows (as opposed to a house), who they bought such windows from or any other facts that would suggest an agency relationship between Pella and its authorized dealers or sellers. Without such facts, the Blasko and Bartz Plaintiffs have failed to nudge their implied warranty claims, and in particular, their theory of privity, "across the line from conceivable to plausible." Twombly, 550 U.S. at 547.  To the extent the Blasko and/or Bartz Plaintiffs wish to rely on such a theory – in order to allege a viable implied warranty claim – the Amended Complaint should be amended to incorporate facts in support of same.

Similarly, in the context of assessing Plaintiffs' unjust enrichment claims, the Court held:

> [B]ased on the current pleading, [the Court] is not in a position to assess the timeliness of Plaintiffs' unjust enrichment claims because Plaintiffs have failed to specify: (a) the particular benefit conferred on Pella by each particular Plaintiff, and (b) the general time frame when each particular benefit was conferred.  For instance, Plaintiffs state, in their opposition brief, "[e]ach plaintiff alleged that benefits were conferred on Pella by the initial purchase of these defective factory made window combinations and then by the payments for repairs and/or replacement of the defective windows." (Pl. Opp'n Br. at 27). In ambiguously framing their claim – to include multiple potential benefits conferred by various people at unspecified or various points in time – Plaintiffs have failed to provide Pella with proper notice of what the claim is and the specific grounds upon which it rests, in violation of Rule 8(a) of the Federal Rules of Civil Procedure.

Thus, to the extent Plaintiffs choose to amend their claims, including but not limited to their implied warranty and unjust enrichment claims, the Court has already directed Plaintiffs to incorporate many

of the very facts that Pella now seeks by way of a Rule 12(e) motion. To the extent Pella maintains that any further information – including the vintage and/or brand information for each challenged window – should be required at the pleading stage, Pella has failed to provide any legal authority in support of such request.  Pella's motion for a more definite statement pursuant to Rule 12(e) is therefore denied without prejudice.

## <u>CONCLUSION</u>

Based on the reasons set forth above, Pella's motion to dismiss is granted in part and denied in part.  Plaintiffs are granted leave to file an amended complaint which cures the pleading deficiencies discussed above on or before June 3, 2011.  An appropriate Order accompanies this Opinion.

 Jose L. Linares
Date:   April 5, 2011                                          JOSE L. LINARES,
                                                                           UNITED STATES DISTRICT JUDGE